[During the last vacation, Mr. Justice BENSON, having been appointed a judge of the circuit court of the United States, resigned his seat in this court.]

### WADDINGTON and others *against* VREDENBERGH.

An *audita querela, quia timet,* cannot be sued out by a purchaser of land, until after execution has been issued.

The writ must be allowed in open court, but is not itself a *supersedeas;* and where the party is not in actual custody, or sues *quia timet,* a *venire facias* is the proper process.

A. and B. partners, in trade, having dissolved their partnership, B. took the property, and engaged to pay off all the debts due by the partnership, among which was a judgment against A and B. at the suit of C. B. having become insolvent, C. threatened to take out execution against A., who paid the amount of the judgment, and C. agreed that A. might have the benefit of the judgment, to recover the amount, out of the property of B. in the name of C. A. sued out execution against the land of B., which was bound by the judgment; B. assigned all his property to D. and others, for the benefit of his creditors, and it was held that A. was to be considered merely as a surety of B., and entitled to an equitable lien on the property of B.,·and that D. and others, to whom it was assigned, took it, subject to such equitable lien ; and the court could not, therefore, relieve them by an *audita querela.*

THE defendant obtained a judgment against White and Stout, on a policy of insurance, subscribed by them as partners. They became partners, as insurers, on the 29th February, 1796, and the partnership was dissolved on the 9th December following. White assumed all the
*business, profits, and responsibilities, and agreed [*228]

to pay Stout 1500 dollars for his share of the profits, and indemnify him against all debts due by the partnership, among which was the loss for which the defendant brought his action and recovered judgment. The suit was against both, and White entered an appearance for himself and Stout, but the latter knew nothing of the suit. After the judgment was obtained, White gave his promissory note to the defendant, for the amount, payable in thirty days; but before the expiration of that time, he failed, and assigned all his property (including land, which was bound by the judgment) to the present plaintiffs, for the benefit of all his creditors. The defendant then demanded payment of Stout, and was about to issue execution against him on the judgment, when Stout paid him the amount, under an agreement that he (Stout) should have the benefit of the judgment, and might use the name of the defendant to recover the money out of the property of White. An execution was then issued on the judgment, directed to the sheriff of Onondaga county, for the benefit of Stout. The plaintiff then filed a bill in chancery, for a discovery, against the defendant and Stout, and also against D. and G. Ludlow, to whom the defendant was indebted, and to whom the note, above mentioned, was assigned by White, before his failure, together with the policy of insurance, on which the judgment was obtained, as collateral security. On this bill an injunction was obtained, by which the execution was stayed. The defendants in chancery having answered, the bill was dismissed, as to D. and G. Ludlow, but the bill and injunction were retained, as to the other defendants, for six months, to give the plaintiffs an opportunity to proceed at law. The six months having expired, without any proceedings at law, on the part of the plaintiffs, an execution was issued on the judgment, returnable at the last January term.

[*229]    *The plaintiffs sued out an *audita querela*, and a motion was now made for its allowance, for a *venire facias* to bring in the defendant, and for a *supersedeas* to the execution.

*Harison*, for the plaintiffs.

*Pendleton*, contra.

RADCLIFF, J. delivered the opinion of the court. 1. A feoffee, or purchaser of lands subject to a judgment, cannot have an *audita querela, quia timet*, but is entitled to sue out this writ, only *after execution* issued. So a feoffee, or purchasee of *part* of the land, cannot have it till after execution against him, although the execution be issued against the residue of the lands of the original debtor. (3 Viner, 321, B. pl. 1, 2, 3, 4.) Hence the assignees, in the present case, viewed in the light of purchasers, if they were entitled to this writ, could not bring it till after the expiration of six months, to which time the injunction was extended, and till after the execution issued. They are not, therefore, too late.(*a*)

2. The writ must be allowed in open court, and is not of itself a *supersedeas*, which may be granted or not, according to the circumstances of the case. (2 Cromp. 436, 437. 1 Salk. 92. 1 Com. Dig. 652, 653, E. 3 and 5.)(*b*)

3. The proper process, where the party is not in active custody, or where he sues *quia timet*, is a *venire facias*. (1 Salk. 92. 2 Cromp. 443. 1 Com. Dig. 650, 651.) The process applied for is, therefore, proper, if the writ of *audita querela* be well brought.

The principle on which the writ is brought, and endeavored to be maintained by the plaintiffs, is, that the judgment was paid and satisfied by Stout, one of the defendants thereto, and was thereby discharged, and cannot again be set up by him and acted upon against White, notwithstanding the circumstances under which Stout *was [*230] obliged to pay it, and the agreement between him and the then plaintiff, Vredenbergh.

On the part of the defendant, it is objected, 1. That the matter, on which this writ is brought, is the same that was offered in chancery, and on which that court refused to interpose ; that the merits have been there decided ; and it being

(*a*) See note (*a*), p. 262, to *Wardell* v. *Eden*.
(*b*) Id.

the decision of a court to which the question properly belonged, this court ought not now to interfere.

2. That on the merits, Stout is to be considered in the light of a surety, and in equity is entitled to the benefit of this judgment; and that the plaintiffs, as assignees, could only take the property of White, subject to his equitable lien.

As to the first point; the proceedings in chancery do not fully appear. In the affidavit of the defendant's counsel it is stated that he is informed, and believes, that this application is founded on the same matters, the merits of which were determined in the court of chancery. If the determination of that court ought to preclude the remedy sought here, the whole proceedings, with the bill and answers, ought to have been shown, that we might fully see the grounds on which that court went. But from the circumstance, that the injunction was there retained for six months, in order to afford the opportunity of proceeding at law, it is to be inferred that that court intended to leave the parties to their legal remedy, without restraint or prejudice to their legal rights. If it had finally decided on their rights, and concluded them by its decree, it would rather have enjoined the present plaintiff from proceeding at law, than have continued the former injunction.

3. On the merits, I am inclined to think, that after the dissolution of the partnership between White and Stout, and White's undertaking to pay the whole of the partnership debts, Stout, in relation to him, is to be considered as a surety merely; and if so, he is entitled to all *equitable liens on [*231] the property of White. (2 Vernon, 608. 1 Vesey, 251. 2 Vesey, 100, 371.) It was competent for him and Vredenbergh, the original plaintiff, to make the agreement, that he should have the benefit of the judgment. A court of equity would allow Stout to proceed for that purpose, on the judgment, in the name of Vredenbergh, and an *audita querela*, being in the nature of an equitable suit, we ought not to grant a *supersedeas* to the prejudice of the equitable rights of Stout. The plaintiffs here, as assignees of an insolvent, for the benefit of his creditors, do not stand in a better condition than

Waddington v. Vredenbergh.

any other assignee or purchaser of White would do. They must take the property, subject to all equitable claims.(a)

The granting a *supersedeas* being in the discretion of the court, we are of opinion that under the circumstances of this case, it ought not to be allowed.

Motion denied.

(a) It is a general principle, that a surety who pays the debt of his principal is entitled to the securities which the creditor holds against him. This is accurately expressed by Chancellor Walworth, in *Eddy* v. *Traver*, (6 Paige R. 521, 524.) " It is an established principle of equity that sureties, or those who stand in the situation of sureties for those who pay a debt for them, are entitled to stand in the place of the creditor, or to be subrogated to all his rights as to any fund, lien or equity which he may have against any other person or property on account of the debt. Lord Brougham, in the case of *Hodgson* v. *Shaw*, (3 Mylne & Keen, 190, 191, 192,) puts this doctrine in a strong light. " The rule here," says he, " is undoubted, and it is one founded on the plainest principles of natural reason and justice, that the surety, paying off a debt, shall stand in the place of the creditor, and have all the rights, which he has, for the purpose of obtaining his reimbursement. It is hardly possible to put this right of substitution too high ; and the right results more from equity than from contract or *quasi* contract ; unless in so far as the known equity may be supposed to be imported into any transaction, and so to raise a contract by implication. The doctrine of the court in this respect was luminously expounded in the argument of Sir Samuel Romilly, in *Craythorne* v. *Swinburne*, (14 Ves. 159 ;) and Lord Eldon, in giving judgment in that case, sanctioned the exposition by his full approval. ' A surety,' to use the language of Sir S. Romilly's reply, ' will be entitled to every remedy which the creditor has against the principal debtor, to enforce every security and all means of payment ; to stand in the place of the creditor, not only through the medium of contract, but even by means of securities entered into without the knowledge of the surety ; having a right to have those securities transferred to him, though there was no stipulation for that ; and to avail himself of all those securities against the debtor.' " (*Cuyler* v. *Ensworth*, 6 Paige R. 32. *King* v. *Baldwin*, 2 Johns. Ch. R. 554. *New York State Bank* v. *Fletcher*, 5 Wend. R. 85. *Beardsley* v. *Warner*, 6 id. 610. *Clason* v. *Morris*, 10 Johns. R. 525. *Powell* v. *Smith*, 8 Johns. R. 249. *Patterson* v. *Pope*, 5 Dana, 243. *Pride* v. *Boyce*, 1 Rice Eq. R. 275. *Bank, &c.* v. *Adgar*, 2 Hill, S. Ca. 266. *United States Bank* v. *Stewart*, 4 Dana R. 27. *Prather* v. *Johnson*, 3 Harr. & John. 487. *Reed* v. *Emery*, 1 Serg. & Rawle, 339. *Greiner's Estate*, 2 Watts, 414. See act of Congress, March 2, 1799. *Childs* v. *Shoemaker*, 1 Wash. C. C. 494. *Pigou* v. *French*, id. 278. *Norton* v. *Soule*, 2 Greenleaf, 341. *Parsons* v. *Briddock*, 2 Vern. 608. S. C. 1 Eq. Ca. Ab. 93. *Mayhew* v. *Crickett*, 2 Swanst. 185. S. C. 1 Wils. C. C. 418. *Praed* v. *Gardiner*, 2 Cox, 86. *Earl of Rosse* v. *Sterling*, 4 Dow, 442. *Beckett* v. *Micklethwaite*, 6 Madd. 199. *Capel* v. *Butler*, 2 Sim. & S.

Waddington v. Vredenbergh.

457.  *Lord Harberton* v. *Bennett*, 1 Beat. 386, and see *Ex parte Rogers*, 4 Deac. & Ch. 623.  S. C. 2 Mont. & Ay. 153, and the observations of Lord Brougham, C., in *Hodgson* v. *Shaw*, 3 Myl. & K. 183, and of Sir W. Grant, M. R., in *Wright* v. *Morley*, 11 Ves. 12, of Lord Eldon, C., in *Copis* v. *Middleton*, T. & Russ. 224, and of Lord Hardwicke, C. in *Ex parte Crisp*, 1 Atk. 133.  *Watkins* v. *Flanagan*, 3 Russell, 421.  *Ward* v. *Henly*, 1 Younge & Jervis, 225.  *Ex parte Houston*, 2 Glyn & Jamieson, 36.  *Ex parte Gee*, 1 id. 330.  *Ex parte Sergeant*, 1 id. 183.  *Ex parte Brook*, 2 Rose, 334.  *Robinson* v. *Wilson*, 2 Maddock, 434.  *Glossop* v. *Harrison*, 3 Ves. & Beam. 134.  Coop. 61.  *Ex parte Rushforth*, 10 Vesey, 409.  *Hill* v. *Kelly*, 1 Ridg. Lap. & Sch. 265.  *Ex parte Badger*, 1 Cox, 28.  See *Bathurst* v. *De La Zouch*, Dick. 460.  *Francis* v. *Rucher*, Amb. 674.  *Lee* v. *Rook*, Mosely, 318.)

By the Code Napoleon, (§ 2029,) the surety who has paid the debt is subrogated to all the rights which the creditor had against the debtor. The Codes of Sardinia, (§ 2066, § 2069,) of Austria, (§ 1358,) of Prussia, (§§ 338, 339 ; see also § 311; see the Code of the Canton du Vaud, §§ 1506—1513,) and of Bavaria, (Lib. 4, ch. 10,) accord with the French Code.  This rule existed substantially in the civil law.  The law of the Digest, not giving the benefit of discussion to those who became sureties, (Pothier ad Pand. ed. 1823, vol. 19, p. 49,) although the more ancient law had done so, (Id. p. 43, *et seq.*) usage introduced another manner of relieving sureties by compelling the creditor to transfer his securities to the surety who was ready to pay the amount due.  " Fidejussoribus succuri solet ut stipulator compellatur et qui solidum solvere paratus est, vendere cæterorum nomina."  (Pothier ad Pand. Lib. 46, § 45.)  For this reason, Julian observed, " If you have loaned to Titus a sum of ten pieces on my mandate, and you sue me upon the mandate, Titus will not be released, and you can only recover upon ceding to me your rights of action (*actiones*) against him.  " Si mandatu meo, Titio decem credideris, et mecum mandati egeris, non liberabitur Titius : sed ego tibi non aliter condemnari debebo, quam si actiones, quas adversus Titium habes, mihi præstiteris."  (L. 13, Julian. Lib. 14, Digest.)  The creditor (says Pothier) is held to cede not only the right of action which he has against the principal debtor, but also all those which are accessory to it ; as for example those that he has against the other sureties and upon pledges which he has received.  Neque solum actionem quam habet adversus reum principalem, sed et omnia hujus actionis accessoria, cedere creditor tenetur ; puta, actiones adversus cæteros adpromissores, et pignora. (Poth. ad Pand. vol. 19, p. 50, ed. 1823.)  Hence the rescript of Diocletian and Maximien : As the creditor has the right to sue the sureties before the debtor, so it is right that the surety who requires it shall not be obliged to pay until the securities and pledges of the creditor shall have been ceded to him. " Sicut eligendi fidejussores creditor habet potestatem, ita intercessorem postulantem cedi sibi hypothecæ, sive pignoris obligata jure, non prius ad solutionem nisi mandata super hac re fuerit persecutio, convenit urgeri."  (L. 21, Cod. 8, 41, h. tit.)  Ab hac regula nic fiscus excipitur.  (Paulus, l. 45, § 9, ff. 49, 14 de jur. fisci.  (Paul. lib. 5 sent. l. fin. Cod. 7,73 de privileg. fisci.)

Waddington v. Vredenbergh.

It was made a question in the civil law how the creditor, who had been *paid*, could transfer any rights of action, for when he, who has a debtor and sureties, having received payment from one of the sureties, cedes his rights of action, it may be said that he has none, since he has received that which was due to him, and that all the sureties are discharged ; but this is not so, because he has not received *in payment*, but, as it were, sold his claim against the debtor, and consequently he has rights of action that he ought to transfer to the surety, who buys them on paying the price, " quum is qui et reum et fidejussores habens, ab uno ex fidejussoribus accepta pecunia, præstat actiones : poterit quidem dici nullas jam esse, quum suum percepe- rit, et perceptione omnes liberati sunt. Sed non ita est : non enim in solutum accipit, sed quodammodo nomen debitoris vendidit, et ideo habet actiones, quia tenetur ad id ipsum, ut præstet actiones." (L. 36 ; Paul. lib. 14, ad Plaut.) Pothier expresses this more clearly when he declares the signification of this passage to be, that it is wrong to say that the surety has no existing right of action that he can transfer ; on the contrary, as he is held to transfer such rights to the surety, who pays him upon this condition, he does not receive his money in payment, but as the price of the right which he ought to cede to him. Sensus est : *Et ideo* perperam dicitur eum nullas habere actiones quas cedere possit, imo *habet actiones, quia*, quum *ad id ipsum teneatur, ut præs- tet actiones* fidejussori ea lege solventi ut sibi cedantur : pecuniam *non* tan- quam *in solutum*, sed tanquam in pretium actionum quas ei cedere tenetur, accipere debet. (Poth. ad Pand. Lib. 46, tit. 1, § 46, n. 1.)

But let us remark, in passing, that although this rule does not seem to have been adopted in the English jurisprudence, Mr. Justice Story, who seems to regret that the Roman rule was not adopted, speaks thus in his Commentaries on Equity Jurisprudence ; (4th ed. §§ 499 *b.* 499 *c.* and 499 *d.*:) " Another point, of more extensive importance in practice, is, Whether a surety, who pays off the debt of the principal, for which he is bound, is en- titled to require the creditor, upon such payment, to make an assignment to him of the debt, and of the instrument by which it is evidenced. It seems formerly to have been thought that he had such a right ; and the general language of some of the authorities, that the surety is in such cases entitled to every remedy which the creditor had against the principal, was supposed fully to justify and support this conclusion. (*Ex parte Crispe*, 1 Atk. 135. *Parsons* v. *Briddock*, 2 Vern. R. 608. *Wright* v. *Morley*, 11 Ves. 12, 21, 22. *Dowbiggin* v. *Bourne*, 1 Younge R. 111. S. C. 2 Younge & Coll. 464. *Butcher* v. *Churchill*, 14 Ves. 567, 575, 576. *Ex parte Rushforth*, 10 Ves. 409, 414. *Robinson* v. *Wilson*, 2 Madd. R. 464. *Craythorne* v. *Swinburne*, 14 Ves. 160, 162. See also *Hodgson* v. *Shaw*, 3 Mylne & Keen, 183, 185. *Hotham* v. *Stone*, 1 Turner & Russ. R. 226, note. *Butcher* v. *Churchill*, 14 Ves. 568, 575, 576.) But the doctrine is now fully established, that the surety has no such right to be enforced in equity ; and that he cannot insist upon any such assignment. The ground is, that, by the payment of the debt, the title derived under the instrument has become extinguished, and *functus officio ;* and, therefore, an assignment thereof would be utterly useless ; and, if the surety should afterwards sue for the debt at law, in

the name of the creditor, the principal might plead such payment in bar of the action. (*Woffington* v. *Shaw*, 2 Ves. 569. *Gammon* v *Stone*, 1 Ves. 339. *Copis* v. *Middleton*, 1 Turn. & Russ. 224, 229. *Jones* v. *Davids*, 4 Russ. R. 297. *Hodgson* v. *Shaw*, 3 Mylne & Keen, 183. *Hudson* v. *Stalwood*, Cas. Tem. Hard. 133. *Armitage* v. *Baldwin*, 5 Beav. R. 278.) In such a case it would make no difference in the right of the surety to sue, that, upon payment of the debt, he had procured an assignment thereof to be made to a third person, instead of to himself for his benefit. (See *Reed* v. *Norris*, 2 Mylne & Craig, 361. *Jones* v. *Davids*, 4 Russ. R. 277. *Copis* v. *Middleton*, 1 Turn. & Russ. 224, 229. But see *Butcher* v. *Churchill*, 14 Ves. 568, 575, 576.) Neither would it make any difference, that several judgments had been obtained by the creditor against the principal and surety, and that the latter had paid the debt on the judgment against him, and then sought an assignment to be made of the judgment against the principal; for the judgment would be effectually extinguished by such payment; and the surety would not be permitted to avail himself of it against the principal. (*Dowbiggin* v. *Bourne*, 2 Younge & Coll. 464. But see *Hill* v. *Kelly*, 1 Ridg. L. & Schoales R. 265.) The error of the contrary opinion, if, indeed, upon the principles of enlarged equity, any there be, seems to have arisen from confounding the right of the surety, on payment of the debt, to be substituted for the creditor, and to have an assignment of any independent collateral securities, with the supposed right to have the original debt assigned. Such independent collateral securities may well be required to be assigned by the creditor, in favor of the surety; because, in many cases, the principal would not be entitled to have a re-transfer thereof from the surety, without paying him the sums advanced by him to the creditor, as a matter of equity between the parties. But the assignment of the debt itself, which had been already paid, would be a mere nullity in equity, as well as at law, since it could not have, in the hands of the surety, any subsisting obligation. Upon reasoning somewhat analogous to that, the supposed error of which we have been considering, it was formerly held, that if a surety upon a bond should discharge it, he would be entitled to be considered as substituted for the original creditor, as a specialty creditor of his principal; and, consequently, in the marshalling of the assets of the principal, he would, as to the debt so paid, have a priority over simple contract creditors. (*Hotham* v. *Stone*, 1 Turn. & Russ. R. 226, note. *Robinson* v. *Wilson*, 2 Madd. R. 464. *Wright* v. *Morley*, 11 Ves. 22. *Powell's Ex'ors* v. *White*, 11 Leigh R. 309, fully approves this same doctrine.) But upon this point, also, a different doctrine is now established; and it is held, that a surety, so paying a bond debt, will be treated, in marshalling assets, as a mere simple contract creditor. (*Copis* v. *Middleton*, 1 Turn. & Russ. 224, 229, 231. *Jones* v. *Davids*, 4 Russ. R. 277. *Hodgson* v. *Shaw*, 3 Mylne & Keen, 183.) The ground of this doctrine is, that the surety is not subrogated to the rights of the creditor, in such a case (whether he has procured an assignment of the bond, when paid, or not;) but he is in fact, as well as in law, to be deemed only as having paid money for the principal upon the footing of an implied contract of indemnity subsisting between them. Yet there are many cases, in which a surety, paying a debt, will be entitled to

Waddington v. Vredenbergh.

stand in the place of the creditor, or to obtain the full benefit of all the proceedings of the creditor against the principal. Thus, for example, if the creditor, in case of the bankruptcy of the principal, has proved his debt before the commissioners, and then the surety pays the debt, the latter will be entitled to the dividends declared on his estate, and the creditor will be held to be his trustees for this purpose. (*Ex parte Rushforth*, 10 Ves. 409. *Wright* v. *Morley*, 11 Ves. 12, 22, 23. *Watkins* v. *Flanagan*, 3 Russ. R. 421. *Ex parte Houston*, 2 G. & Jamieson, 36. *Ex parte Gee*, 1 G. & Jamieson, 330.) So, the surety may compel the creditor to go in and prove his debt before the commissioners ; and, then, if he pays the whole debt, the creditor will in like manner become a trustee of the dividends for him. (*Ex parte Rushforth*, 10 Ves. 409, 414. *Wright* v. *Simpson*, 6 Ves. 734.) In cases of this sort, courts of equity seem to be regulated by the same principles which govern their interference in favor of sureties, to compel creditors to proceed in the first instance against the principal for the recovery of their debts." (Story's Eq. Jur. 4th ed. § 327 ; id. § 698.)

It is worthy of observation, that the surety to whom securities have been transferred does not take the place of a purchaser; for if so, he might retain them, notwithstanding the debtor should pay the whole debt, but only of him who originally received the securities, the reason for which they were given being to pay the principal and interest. "Paulus respondit : Fidejussorem, in quem pignora a confidejussoribus data translata sunt, non emptoris loco substitutum videri, sed ejus qui pignora accepit : et ideo rationem fructuum et usurarum haberi oportere." (L. 59, lib. 4, respons.) Again, this cession of rights of action does not exist absolutely, but only when the surety has demanded it upon paying ; if he has not done so, there remains to him only the action *mandati* or *negotiorum gestorum* against his principal. Hence Gordianus observes : "Mandati actio personalis est : quæ si nomine fidejussoris, vel adversus debitorem, seu heredes ejus competit, præses provinciæ, quæ deberi compererit, reddi jubebit. Pignora etenim, quæ reo stipulandi nexa fuerunt, ita demum ad vos transeunt, si facta nominis redemptione solutio celebrata est, vobisque mandatæ sunt actiones. Quod si factum est, ea quoque vobis persequentibus, adversus pignorum possessores extraordinariam jurisdictionem idem vir clarissimus impertietur." (L. 14, cod. 8, 41, h. tit.) The cession of rights of action ought to be made at the same time as the payment, and not afterwards, unless it may have been made upon that condition. (Poth. ad Pand. Lib. 46, tit. 1, § 49.) For this reason "Modestinus respondit : Si post solutum sine ullo pacto omne quod ex causa tutelæ debeatur, actiones post aliquod intervallum cessæ sint : nihil ea cessione actum, quum nulla actio superfuerit. Quod si ante solutionem hoc factum est, vel quum convenisset ut mandarentur actiones, tunc solutio facta esset, mandatum subsecutum est : salvas esse mandatas actiones ; quum novissimo quoque casu pretium magis mandatarum actionum solutum, quam actio quæ fuit, perempta videatur." (L. 76, ff. 46, 3, de solutionib. lib. 6, respons.)

The right of subrogation equally exists, whether the surety knew of the security or not. (*Mayhew* v. *Crickett*, 2 Swanst. 185. S. C. 1 Wils. C. C.

418. *Praed* v. *Gardiner*, 2 Cox, 86.) And so careful is the law that the creditor shall do nothing to prejudice the surety, that if *securities have been lost*, (*Ex parte Muir*, 2 Cox, 63 ; *Williams* v. *Price*, 1 Sim. & Stu. 581,) or permitted to pass into the hands of the principal, (*Capel* v. *Butler*, 2 Sim. & Stu. 457 ; *Law* v. *The East India Co.* 4 Vesey, 824,) or have become lessened in value, in consequence of the neglect or default of the creditor, the sureties' liability to him will be diminished to the extent of the injury he has sustained. (*Lord Harberton* v. *Bennett*, 1 Beat. 386. *Phillips* v. *Astling*, 2 Taunt 206. *Blisard* v. *Hirst*, Burr. 2670. *Goodall* v. *Dolley*, 1 Term R. 712. *Warrington* v. *Furbor,* 8 East, 242. S. C. 6 Esp. 89. *Holbrow* v. *Wilkins*, 1 Barn. & Cresw. 10. Lord Ellenborough in *Claridge* v. *Dalton*, 4 Maule & Selw. 226. See *Lafitte* v. *Slatter*, 6 Bing. 623.)

The civil law accords with this rule, for the creditor was barred by an exception that by his fault he found himself unable to transfer the rights of action against the debtor. Per hanc exceptionem repellitur creditor, non solum si nolit cedere suas actiones adversus reum et confidejussores, sed et si culpa sua contigerit ut eas non possit cedere. (Pothier ad Pand. Lib. 46, tit. 1, § 47.) Therefore Papinian has said : " Si creditor a debitore culpa sua causa ceciderit, prope est ut actione mandati nihil a mandatore consequi debeat, quum ipsius vitio acciderit, ne mandatori possit actionibus cedere." (L. 95, § 11, ff. 46, 3, de solutionib. Papin. lib. 28, quæst.)

It is said, however, that to entitle the surety to avail himself of the securities which the creditor has, they must have been deposited, (*Wade* v. *Coope*, 2 Sim. 155; by Lord Eldon in *Ex parte Kendall*, 17 Ves. 514; S. C. 1 Rose, 71,) assigned, (*Wright* v. *Morley*, 11 Ves. 12,) or made chargeable, (*Praed* v. *Gardiner*, 2 Cox, 86,) in respect of the *same transaction* in which the surety became liable. (Pitm. Princ. & Sur. 114. Burge on Suretyship, 353.) Thus a husband entitled, in right of his wife, to a sum of bank annuities standing in the names of trustees, assigned the dividends to secure an annuity. The bank annuities had not been reduced into possession, the court of chancery decided that the surety who had been called upon, and had made some payments in respect of the annuity, was, as to payments of the annuity, actually made by him, entitled to stand in the place of the creditor, *and to be reimbursed out of the dividends,* and that he had also an equity to have the fund applied in his exoneration. (*Wright* v. *Morley, supra.*) A principal in a bond, being arrested, gave bail ; judgment was recovered against the bail, and the surety was afterwards called upon to pay and paid the debt ; it was held that he was entitled to an assignment of the judgment against the bail ; for though the bail themselves were but sureties as between them and the principal debtor, yet coming in the room of the principal debtor, as to the creditor, it was held that they likewise came in the room of the principal debtor as to the surety. (*Parsons* v. *Briddock*, 2 Vern. 608. S. C. 1 Eq. Ab. 93. See Lord Brougham's judgment in *Hodgson* v. *Shaw*, 3 Myl. & K. 189. See Burge on Suretyship, 353, 354.)

The civil law also agrees here. " Creditori, qui pro eodem debito et pignora et fidejussorem accepit, licet (si malit) fidejussorem convenire in eam pecuniam, in qua se obligaverit. Quod quum facit, debet jus pignorum in eum

Waddington v. Vredenbergh.

transferre. Sed quum in alia quoque causa eadem pignora vel hypothecas habet obligatas, non prius compellendus est transferre pignora, quam omne debitum exsolvatur." (L. 2, cod. 8, 41, h. tit. Severus et Antoninus.)

The securities also must be of such a nature as " continue to exist and do not get back upon payment, to the person of the principal debtor." (Per Lord Eldon, in Copis v. Middleton, T. & R. 224.) Thus, if principal and surety are obligors in a bond, the one as principal, and the other as surety, and no other assurance is executed to the creditor, and the surety, upon being applied to by the obligee for payment, pays the money due upon the bond, the bond thereby becomes extinguished, and all remedy upon it is at an end : (Gammon v. Stone, 1 Ves. 339 ; Woffiington v. Sparks, 2 Ves. 569 ; Copis v. Middleton, T. & R. 224 ;) and an assignment of it to the surety, who pays it, is of no use ; (Jones v. Davids, 4 Russ. 277 ;) since even the principal might plead payment to an action brought against him in the name of the obligee ; (Woffington v. Sparks, supra ;) and consequently the surety cannot insist upon its assignment. So where the principal and surety gave to the creditor a joint and several promissory note, and the creditor brought separate actions against the principal and surety, and recovered judgment in both actions ; and upon execution issued upon the judgment obtained against the surety, the surety paid the debt and costs : upon bill filed by the representatives of the surety, for the purpose of obtaining an assignment of the judgment, which had been recovered against the principal debtor, it was held, that the creditor having been paid his debt, the judgment was satisfied, and the creditor would not have been permitted to have proceeded upon it at law against the principal ; and it not being available at law in his hands, neither was it available in equity in the hands of the surety, and consequently that the surety could not compel an assignment of it. (Dowbiggen v. Bourne, 1 You. 111. S. C. 2 You. & Coll. 462. Pitman on Principal and Surety, 115, 116.)

And the payment must be of the whole debt. (Ex parte Rushforth, 10 Ves. 409. Burge on Suretyship, 349. Voet, lib. 46, tit. 1, n. 27. Carpz. derf. for. part 2, const. 17, def. 22. Hering. de Fidejus. cap. 27, p. 3, n. 18. Sande de Cessione, Act. 6, n. 35, 36. See also l. 21, cod. 8, 41, n. tit. cited supra.)

Again : if the securities and remedies of the creditor are of such a nature as may involve an expense chargeable against him, he is entitled to an indemnity against all costs and expenses. (Beardsley v. Warner, 6 Wend. 610. Hayes v. Ward, 4 Johns. Ch. Rep. 123, 132.)

Again : though a surety, who pays the debt of his principal, is entitled to be substituted in the place of the creditor, as to all the means possessed by him to enforce payment against the principal debtor ; yet the surety of a surety, though compelled to pay the creditor, is not entitled to be substituted in the place of such creditor for the purpose of enforcing the payment against the principal debtor, if such debtor has paid his immediate surety. (The New York State Bank v. Fletcher, 5 Wend. 85. See Story's Equ. Jurisp. 499, et seq. Theobald's Principal and Surety, ch. 11. Pitman, ut sup. Burge on Suretyship, et seq. where most of the civil and foreign law authorities will be found. See also Burmannus de Fidejuss. Eorumque Privilegiis and De Marsil de Fidejuss. I have taken the liberty to add a number of authorities from

the civil and foreign law not referred to by Mr. Burge, and which I believe have never been brought to the notice of the American student in any work on suretyship.)